# EXHIBIT #1

Transcript of Change of Plea
October 25, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

vs. Case No. 04-20027

TREMAYNE DARKIS,

Defendant.

TRANSCRIPT OF PLEA PROCEEDINGS
before
HONORABLE G. THOMAS VANBEBBER
on
OCTOBER 25, 2004

APPEARANCES

For the Plaintiff: Scott Rask
United States Attorney's Office
500 State Avenue, Ste. 360
Kansas City, Kansas 66101

For the Defendant: Jay D. Dehardt
McQuain, DeHardt & Rosenbloom P.C.
4505 Madison Avenue
Kansas City, Missouri 64111-3500

THE COURT: We will be on the record first in Case No. 04-20027-01, United States against Tremayne Darkis. Would you state your appearance for the government.

MR. RASK: Scott Rask.

MR. DEHARDT: Jay DeHardt on behalf of Tremayne Darkis, who also appears.

THE COURT: Thank you. I have been informed this matter is for a plea today.

MR. DEHARDT: That's correct.

THE COURT: If you and the defendant would step up to the podium, please.

Mr. Darkis, I'm going to ask you some questions this afternoon to satisfy myself that your plea of guilty is voluntary on your part, and I need to have you sworn to make truthful answers to the questions that I ask you, and also to be sworn to the truth of the written petition in this case to enter your plea of guilty.

There is a petition, is there not?

MR. DEHARDT: Judge, there is.

(The defendant was sworn.)

THE COURT: Mr. Darkis, would you state your name for the record, please.

THE DEFENDANT: Tremayne Darkis.

THE COURT: I want you to understand that you're under oath now and if you answer any of my questions falsely or untruthfully those answers could be used against you in a later prosecution for perjury or making a false statement. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: What is your age?

THE DEFENDANT: Twenty-five.

THE COURT: How far did you go in school?

THE DEFENDANT: Two years in junior college.

THE COURT: Are you under the care of a physician or psychiatrist or any health care provider?

THE DEFENDANT: No, sir.

THE COURT: Are you taking any medication or drugs?

THE DEFENDANT: No, sir.

THE COURT: Have you received a copy of the -- what do we have here? Do we have a superseding indictment in this case? No. -- the indictment; that is, the written charge against you in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Have you discussed that charge and the case in general with Mr. DeHardt, your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Are you fully satisfied with the representation, counsel, and advice that he has given you?

THE DEFENDANT: Yes, sir.

THE COURT: And are you aware that he has had some discussions with the attorney for the government, which has led up to a plea agreement in this case?

THE DEFENDANT: Yes, sir.

THE COURT: And are those discussions responsible at least in part for your willingness to change your plea and plead guilty today?

THE DEFENDANT: Yes, sir.

THE COURT: Have you read and discussed the plea agreement with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Have you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: Is that your entire agreement with the government?

THE DEFENDANT: Yes, sir.

THE COURT: And do you understand the terms of it?

THE DEFENDANT: Yes, sir.

THE COURT: Has anybody made any different promise to you?

THE DEFENDANT: No, sir.

THE COURT: The terms of the plea agreement are merely recommendations to the court, and I could reject the recommendations without permitting you to withdraw your plea of guilty, and I could impose a sentence that may be more severe than you may anticipate under the plea agreement. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone attempted in any way to force you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Are you pleading guilty of your own free will because you are guilty?

THE WITNESS: Yes, sir.

THE COURT: As I understand it, you are going to plead guilty to Count 1 and to Count 5 of the indictment today, and the maximum penalties provided by law for a conviction of the offense charged in Count 1 of the indictment could be a term

of imprisonment of not less than five years and not more than 40 years and a fine of not more than $2 million and not less than four years of supervised release to follow any term of imprisonment. In addition, a special assessment of $100 is required to be imposed. And for a conviction of the offense charged in Count 5 -- that's the gun charge -- the maximum penalty could be a term of imprisonment of not less than five years to run consecutive to the sentence imposed on Count 1.

And the indictment doesn't have endorsed on it what the maximum penalty could be, as the minimum.

MR. RASK: I think there's some dispute, but there is some that think the maximum could be life, your Honor, under 924(c).

THE COURT: Then there's that possibility, that it could be life imprisonment, and, of course, as I said, the five years must run consecutive to the sentence imposed on Count 1.

In addition, a fine of not more than $250,000 could be imposed, and any sentence of imprisonment could be followed by a term of not more than three years of supervised release, and a special assessment of $100 could be imposed. The supervised release that I mentioned is release on conditions of

supervision after serving any time of imprisonment imposed by the court, and if you should violate any of those terms and conditions, you could receive additional time of imprisonment. Do you understand those possible consequences of your plea?

THE DEFENDANT: Yes, sir.

THE COURT: Guidelines have been issued for judges to follow in determining sentences in criminal case such as yours, and there's some controversy now about the applicability of the guidelines, and the plea agreement, however, waives any dispute about the guidelines and provides that the court can set the offense level at the sentencing hearing by making a determination by the preponderance of evidence. I presume you've discussed that with your attorney.

THE DEFENDANT: Yes, sir.

THE COURT: And have you and Mr. DeHardt talked otherwise about how the sentencing guidelines might apply to your case?

THE DEFENDANT: Yes, sir.

THE COURT: I will not be able to determine the sentence under the guidelines until a presentence report has been completed and you and the government have had an opportunity to challenge the facts reported to me, and also to challenge or contest the

recommended application of the guidelines by the probation officer, so the sentence imposed could be different from any estimate that your attorney may have given you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Once your guideline range has been determined, I would have the authority in some circumstances to depart from the guidelines and impose a sentence that is more severe or less severe than the sentence called for by the guidelines. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Now under some circumstances you, or someone, may have the right to appeal any sentence that I impose; however, it appears that from the plea agreement that you have waived the right to appeal any sentence that I impose unless I should make an upward departure from the sentencing guidelines; and in addition to that, the Paragraph 11 of the written plea agreement, you're waiving the right to come back to court at a later time to challenge or contest this prosecution or your conviction or the sentence imposed. And have you discussed that matter with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: And you understand what you're waiving?

THE DEFENDANT: Yes, sir.

THE COURT: You have a right to plead not guilty to the offenses charged against you in Counts 1 and 5 of the indictment, and you have a right to persist in that plea of not guilty. You would then have a right to a trial by a jury, and at trial you would be presumed to be innocent. The government would have to prove your guilt beyond a reasonable doubt. You would have the right to have your attorney assist you in your defense. You would have the right to see and hear all the witnesses and to have them cross-examined in your defense. You would have the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and you would also have the right to obtain court orders or have subpoenas issued to compel witnesses to attend court to testify in your defense. If you should decide not to testify or put on any evidence, those facts could not be used against you.

Those are the rights associated with a trial, and by entering a plea of guilty, if that plea is accepted, there will not be a trial and you will have

waived or given up those rights associated with the trial that I just described. Do you understand those things?

THE DEFENDANT: Yes, sir.

THE COURT: In Count 1 of the indictment the charge is -- and the government would have to prove -- that beginning about October 1, 2003, and continuing to on or about February 20, 2004, you and Brandi Altman knowingly and intentionally agreed together with each other and with other persons to commit the offense of distributing and possessing with the intent to distribute 1 kilogram or more of a mixture and substance containing marijuana, which is a controlled substance. And that's in violation of federal law. Are you saying you did that?

THE DEFENDANT: Yes, sir.

THE COURT: And in Count 5 of the indictment the charge is that -- and the government would have to prove that on or about January 1, 2004, in the District of Kansas you and Brandi Altman possessed certain firearms. They are alleged to be a Taurus Model PT 92 AF 9 millimeter handgun and a Bryco Model Jennings Nine-CS 9 millimeter handgun, and that you possess the firearms during and in relation to and in furtherance of a drug-trafficking

crime, and the drug-trafficking crime is alleged to be the conspiracy to distribute and to possess with the intent to distribute marijuana and possession with the intent to distribute marijuana. And that's alleged to be in violation of federal law. Are you saying you did that, also possessed those firearms?

THE DEFENDANT: Yes, sir.

THE COURT: All right. In Paragraph 2 of the written plea agreement it's set out the factual basis for this guilty plea. And have you reviewed and read that paragraph?

THE DEFENDANT: Yes, sir.

THE COURT: Do you agree that the government could prove the facts alleged there?

A Yes, sir.

Q Is that what the government relies on as a factual basis?

MR. RASK: It is, your Honor, and I would like to note for the record that in the second paragraph of the factual basis the last sentence has been crossed out by both parties, and we have initialed the original plea agreement, and in the second-to-the-last sentence it should just state that the defendant often directed codefendant Altman to handle drug transactions like this, and we have

crossed out the "or other females" from that statement.

THE COURT: So in the factual basis you're eliminating any reference to other females?

MR. RASK: Correct.

THE COURT: And you agree to that?

MR. DEHARDT: Judge, that is correct.

THE COURT: All right. Has the written petition to enter the plea been signed?

MR. DEHARDT: It has been signed by me, your Honor.

THE COURT: All right. Let's have the defendant sign it now.

MR. DEHARDT: It's been signed by Mr. Darkis now, your Honor.

THE COURT: Please pass that up to the clerk. And the written plea agreement also, if you would pass that to the clerk.

Let the record show that the defendant has signed the petition to enter the plea of guilty; he's been sworn to it; his attorney has signed the certificate of counsel. I think typed under there is Jack West, but let the record show that Mr. DeHardt actually signed this.

MR. DEHARDT: Mr. West is my partner, your

Honor, and a member of my film.

THE COURT: Thank you. The written petition is received by the court. It is approved, and the clerk is directed to file it. The plea agreement has been signed by the defendant and by all counsel, and the clerk is directed to file it also.

Mr. Darkis, how do you now plead to the charges contained and set out in Counts 1 and 5 of the indictment? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: It is the finding of the court that the defendant is fully competent and capable of entering an informed plea; that the defendant is aware of the nature of the charges and the consequences of the plea; that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted, and the defendant is now adjudged guilty of that offense.

Do you disagree with any of the findings that I just made?

THE DEFENDANT: No, sir.

THE COURT: I'll set sentencing in this case for January 10, 2005, at 3:00 p.m., and direct

that a presentence report be prepared with the probation office to assist in sentencing.

Mr. Darkis, you'll be asked to give information to the probation officer for the report. You may have your attorney present when you do that, if you wish, and prior to the sentencing hearing you and your attorney will have an opportunity to read the presentence report and to file any objections to it, and at that sentencing hearing you and your attorney will have an opportunity to speak to the court on your behalf.

Is there anything further today?

MR. RASK: Nothing by the government, your Honor.

MR. DEHARDT: Nothing by the defense, your Honor.

THE COURT: That will conclude our hearing in Mr. Darkis's case.

(Court was adjourned.)

* * * * *

CERTIFICATE

STATE OF KANSAS |
| ss
COUNTY OF JOHNSON |

I, Rebecca Ryder, RMR, CRR, a Certified Shorthand Reporter and official reporter for the United States District Court, District of Kansas, do hereby certify that as such official reporter I was present at and reported in machine shorthand the above and foregoing proceedings.

I further certify that a transcript of my shorthand notes was prepared and that the foregoing transcript is a true and correct transcript of my notes in said case to the best of my knowledge and ability.

S/REBECCA S. RYDER
REBECCA S. RYDER, RMR, CRR